Good morning and thank you for being a little flexible with the schedule given the weather situation. Case number 2023-20165, Bay Area Unitarian v. Church of All v. Harris County District Attorney of All. Ms. Taylor, you may proceed. Thank you, Your Honor. Ms. Taylor, you may proceed. The Texas Trespass Code puts proper donors who wish to give life to firearms to the chosen. You, Governor, deserve to sign it or address the dimensions of your right to exclude. Plaintiffs deserve to remember the challenge you have seen, but the merits of that challenge are not before the Court of Appeals. The Court, therefore, may not decide at what level of scrutiny, why, what government interest the scheme serves, or whether the scheme survives review. Rather, the sole question on this appeal is whether plaintiffs have standing to bring suit. As the Supreme Court has reminded us in recent decisions such as SOLE, TransUnion, and Vendor Alternative Energy, it is important not to make standing law more complicated than it needs to be. The plaintiffs must have a recognizable personal state in the litigation, and to be able to answer the question, What's up to you? Here, plaintiffs have demonstrated that they have multiple answers to this basic question. Both plaintiffs have submitted some of the signs. That has led to numerous injuries. The signs conflict with plaintiffs' expressive preferences. The signs' requirements also discriminate asymmetrically on the basis of content and viewpoints. Plaintiffs have also suffered popular injuries because they have had to pay more for the time. The signs also reflect reputational injury on plaintiffs, as unrebutted evidence indirectly reflects. The Church has also decided that the burden on its discretion caused by posting all 3006 and 3007 signs is too much. It is therefore accepted as an instrument of its righteous and concealed firearms. That is a sacrifice of its property rights. It is also a sacrifice of its freedom to associate for religious purposes, because allowing firearms into its religious gathering is at odds with its belief in compassion and nonviolence. All of these come down to recognizable injuries if they are not self-inflicted. An injury is not self-inflicted where the government conditions an important benefit on human rights. That is a familiar pattern in unconstitutional conditions cases, where courts routinely fine stand-ins. Indeed, thousands of Texas property owners have made the common-sense decision to post 3006 and 3007 signs in order to give legally sufficient notice of their intention to include. These property owners are not on the fraud. They are adapting their conduct to have the fullest protection the law affords for their property rights. Plaintiffs are no different. They satisfy the Article III injury requirement. The other requirements for Article III standing are also readily satisfied here. On traceability, all that is required from your key precedents of this Court, including J.P. v. DeVos, is that defendants be among those who cause plaintiff's injury. Because none of the defendants deny that they enforce Section 3006 and 3007 as written, this element is satisfied. It does not matter that defendants do not directly enforce the law against plaintiffs, but rather that some plaintiff's injuries follow from a third party's predictable responses to the law. Indeed, the list of precedents of this Court and the Supreme Court confirming stand-ins where a third party is similarly involved is long. K.P., General Landau v. Biden, Book People, Fenton v. Speer, Department of Commerce v. New York, and Biden v. Alternative Energy, to name a few. On rejectability, if the District Court first enters a request for declaratory injunctions relief, then the burdensome definitions of written communication in Section 3006-3 and Section 3007-3 could be invalidated, as plaintiffs predictably provide members by oral or written communication in the reasonable manner that they're choosing. That would cure their injury, because it would release them from the horrors of the level that they currently face. Plaintiffs, therefore, got standing, had a room for discussion. There's been an argument that there's not a real injury in this case, because whether or not you post a fine in the manner that the government is requiring you to post them, that the police will come anyway. How do you respond to that? I have two responses. One, when the record reflects that when the police arrive, they follow the law, which we would expect, and they have not exceeded. So, for example, there's the recent report from the Cheddar's Restaurant, where the police arrive, having heard a report of an openly carried firearm. They identify the individual. They check, and the record reflects it. They check to see whether 30 of them un-proposed it. Then they confirm that the individual actually had the gun concealed, but that his shirt had lifted up momentarily so that the firearm was visible, and that there was no arrest made, which is consistent with the fact that the restaurant had not hold the 30 of this time, so that concealed firearms were permitted on the premises. So, in other words, you still have to post a 30 of gunning time in that instance in order for the agency to find the trespasser who needs to respond to it, and then you arrest him. The other point that I would make is that once you call the police, assuming that you posted a non-conforming time and somebody has moved past it onto your property, even if the police do either prompt a subsequent oral notice or other means at that point to define your intent to exclude, there's already been a trespass. Well, not a criminal trespass, but there's already been an intent to mine a property right because the person is on your premises, contrary to the owner's desire to exclude. I mean, for example, if there were an ordinance that said, let's say you have a beautiful lawn and you live right next to a park, and people frequently want to have a picnic on your lawn, if there were an ordinance that said in order to give explicit notice of your intent to exclude folks from your lawn, you're not supposed to put an image of Donald Duck. You don't want to put an image of Donald Duck. And so there are individuals coming out to picnic on your lawn. Even if you get a call from the police and they are removed, there's already been an infringement. There's already been someone's unlawful trespass. Well, why does that mean that you can always sue them for trespass, can't you? What are you deprived of? Because you're deprived of the ability to complain to the police and arguably have a person charged with a criminal misdemeanor, right? Correct. You're deprived of criminalization backing your property. Right. But the law has an absolute defense in it that if the person voluntarily leaves, when you have the conforming sign posted, they can't be charged. Correct. And I think that goes to the point that even if they do leave, they can't be charged. But then you're in the same position that if you don't have a sign at all, because they're not going to be charged, they did trespass, and all you can do is you can sue them for damage. Well, if you have the ability to post legally conforming, legally adequate notice in the form of your choosing, then there would be a crime after the entrant walked past that sign and ignored them. And that criminal sanction does have a deterrent effect. And we know that not only because the Supreme Court and other courts have acknowledged that criminal law has a deterrent effect, but also because the record in this case reflects or agents of evidence reflecting that licensed firearm owners in Texas know what conforming signage looks like. But then you're only talking, you narrowed it down to where you get to post the sign of your choosing. So then you're only talking about one sign, what it looks like, versus another. Correct? You're not complaining about I have to post the sign. You're just complaining about what it looks like and what the text says. So, again, that's true. We would, the person that is burdened is not going to post a sign that is committed in the complaint. It's not in the complaint at all. It's what they would find which is large, contained government-scripted text. Do you get to challenge all the other signs of government regulation? Over here, over here. Do you get to challenge all the other signs government regulations impose, labor signs, employees must wash their hands before returning to work? I mean, do you get to design every sign as the way you want to do it? Well, I think that would, I think the question here would be, would we have standing to challenge the fine of an employee from a law firm? But if you have standing to challenge this one, why not all the others? You may have standing, but then immediately lose, I would call it a fix mostly because your constitutional claim is obviously infirm. So, again, if you were going to change the employee to wash their hands sign, you would have to consent to Rule 11 by a pleading that articulated a basis for your claim. Well, I mean, what you're talking about is we don't like the aesthetics of what the statute says, so we want to just post the sign we want to post, substantively the same. Right. And so that's the first method. I'm not following the answer. The first method protects not only the message that you want to express, but it also can protect the manner in which you want to express it. Let me give a few examples of that. So one class case for men, the thing there that actually, in the poor guy case, there is an example of a version of the statute that they are willing to recite, and it does contain a statement of loyalty to the United States of America, but they also want to But that's compelled. You're not compelled to post a sign at all, and you can give oral notice? So I think that's a completely different question, which I'm happy to address, but I think the question is whether there is a First Amendment injury when the government forces you to express something that you don't disagree with, but in a manner that you find burdensome. Another example would be the Assam case, where Justice O'Connor noted that there is only a very minimal expected difference when the last sentence dropped in her phrasing. That was the new Danton case. But that person was still sufficient to trigger O'Brien and the application of First Amendment scrutiny. So there doesn't have to be a complete ban on your ability to express a message, or a compelled forcing the message that you disagree in order for there to be a person that's recognizing the First Amendment clause. So what happens if you don't comply? Is it that you or your client goes to jail or serves some sanction, or is it that somebody else doesn't go to jail? I'm sympathetic to either concern, but I'm just trying to understand what's the injury at issue here. So the injury is that if you post nonconforming signs, well, I think I would phrase it two ways. So one, if you post nonconforming signs, there is ample evidence in the record reflecting that law-abiding Texas-licensed firearm owners will enter your property unless you are suffering an injury there. It also just states that fact. I'm sorry. I want to make sure I understand. Because I have a very precise concern about the case. If you don't comply, does something happen to your client, or is it that something doesn't happen to the perpetrator? They'll be allowed to trespass. So the point, I think, if Your Honor may have in mind, you've heard that line of thinking. Yes, I wrote the paper on how to pronounce it. So my concern is I didn't like the paper either, even though I wrote it. But we're bound by LEND-RS. Maybe LEND-RS is wrong. Certainly, academics have said it's profoundly wrong. I think the legal system is inadequately sensitive to the needs of crime victims. But we're bound by precedent. Understood. And I think there's a crucial distinction between this case and cases like McComber and United States v. Texas, where the release in those cases and in the LEND-RS caused the prosecution of specific individuals. So, for example, in the United States— But I thought the point of LEND-RS was you simply have no interest in the prosecution of any other individual. You don't have standing to insist that the prosecutor prosecutes. Rightly or wrongly, that's what the Supreme Court seems to have said in LEND-RS. I guess my question to you is I don't think we've discussed the prosecution issue. The issue is that the police will come. I mean, the police and the prosecutors are two different folks. But is it your concern that people who enter your property will not be excluded under trespass, as I guess would be your right to do? Or is there an issue more about whether or not the person will be prosecuted? Well, I guess a couple of points in response to this. One, taking a step back, this is unlike LEND-RS or, for instance, McComber, this is an unconstitutional conditions case. So in some sense, the injury is inflicted by the conditioning of the government benefit on your foregoing a constitutionally protected right. So in most constitutional conditions cases, you don't have any entitlement to the thing that the government is threatening to withhold. But isn't that true here also? That's my concern. I don't think that helps you. I mean, it hurts you. Rightly or wrongly, the thing that you don't have an interest in is the prosecution or arrest of some other person. You obviously have an interest in your own prosecution. Everybody would agree with that. But LEND-RS says you don't have an interest in somebody else being prosecuted. I think that's a little weird. I think we have an interest in the prosecution of people who hurt us. But that's the law. So I guess what I was attempting to say is that the underlying constitutional conditions, I think, is you don't need to have an enforceable interest or an entitlement. This is you don't have an entitlement to the prosecution of any particular individual. You don't have an entitlement to food stamps. But there are other conditions. I thought the injury you're saying is antecedent and independent from the eventual or actual prosecution. I thought the injury was, for example, to the church, the pocketbook injury of buying $100 signs for every entrance. And for the business, the injury is customers. We know from Reddit, whatever forum, they're not going to go in when they see the sign. Those are antecedents. So it's, or myself, surrounded by fraternities. If they want to jump on my back trampoline in the backyard, I will only go exercise my fundamental right to exclude if I'm confident that the police would back me up. I get an answer to my question? Is that the Article III interest antecedent to whether or not there's actual prosecution? So, yes. And that is where I think my first portion of my answer was to say that unconstitutional conditions cases do not require an entitlement. And then I think the next part of my answer would be precisely that set of points, which is that because of having been put to the Detroit, we are undergoing a human sacrifice, either in the case of the coffee shop, that it's right to free expression in the manner in which it chooses, or in the case of the church, it's right to expression on one hand for open areas and it's right to exclude for concealed areas. Ms. Taylor, Ms. Taylor, let us be clear about the law. Posting this particular signage is not the only basis for an illegal trespass by someone carrying a weapon, either concealed or open. You may also give oral notice. Are you compelled to speak if you politely ask someone who has been to leave the premises? What is unconstitutional about giving oral notice, which is, if I'm not mistaken, also part of the ordinary trespass law? So, I think a couple of responses. One, there is underwriting testimony in the record that the plaintiffs have not only did they hear confrontations if oral notice was given, but there have actually been confrontations where would-be entrants who are turned away behave in a hostile manner. The other point that I would make is that that is still part of the more burdensome regime that these property owners are put to, so that where other property owners who have chosen for other reasons are free to use the signage of their choosing. I don't think it cures the harm to say If you want to get through it, though, have to use oral notice. Let me move on to another point, which is you say you're not trying to affect prosecutions, but in your complaint, one of the aspects of relief requested is enter an injunction against enforcement of the heightened notice requirement and requiring the property owners who are seeking to exclude guns from their property need only comply with the notice requirements under the general trespass law. So basically, you're trying to rewrite Texas criminal law. We have tweeted that it would be regressability. I mean, there's a big regressability problem because even if the court entered this injunction, it would be useless because law enforcement authorities are not allowed to enforce criminal law that doesn't exist. So I think there's a couple of points, too, that I would like to make in response to that, Your Honor. One, I don't think that there's any general problem with federal courts invalidating enforcement of state or federal criminal law. No, but you're saying we want to go beyond that, not just invalidate this law, but we get covered under a law which doesn't cover us. Well, I think that, again, the question of remedy would come up if we were to prevail. No, it goes to regressability. Can the court do anything that is worthwhile to solve your alleged injury? So if you, for example, in the Sessions v. Morales and Anaheim v. Supreme Court, there was a gender discriminatory provision in US immigration law. And the court, having found that that violated people's protection, then went on to say there is a difficult question about remedy, Pio, because if we invalidate one portion of the law, we would be broadening the availability of remedies for anything available to everyone. And if we invalidate another portion of the law, we would be denying the availability of remedies to everyone. But that was a question that couldn't be handled through amendment. So again, if we win, there would be a question of severability, which would be analyzed under Texas statutory appropriation principle. And while we've requested relief in our complaint that the heightened notice requirements be redlined, if you will, it's certainly possible that a court applying the Texas principle of statutory appropriation could conclude that some other way of curing the effects of the scheme is more appropriate. So you don't have a specific way that we could redress your client's injury? Because we have to be able to say redressability is not something we do at the end. We do that at the beginning. So there has to be some redressability, some way. We couldn't order the police to arrest people contrary to statute, could we? And so we would have to, how would we redress that? In our merit penalty scheme, we do provide for what we think are redlining statutes. Could you help us? So the only redressability is you want us to redline the statute? But you haven't sued the provocators of the statute, have you? No, but this is sort of how ordinarily injunctive deterritory relief and an action brought under Act Part B would work. So if there is a state statute that violates federal constitutional principle, then I think the representing point is that there's some absolute barrier to the federal court affording some relief. And there is no such absolute barrier. In fact, you are prohibited under Act Part B from doing the type of legislature where the attorney general is on some general relief. And if you first targeted the territory and tried to get relief. OK, so what would you say would be the, how would we instruct the police in a way that would redress your injury that would be allowed for us to do? Well, so I think your question actually goes back to the point that I had wanted to make in response to Judge Ho's question, which is that we are not asking for an injunction that fines the police and the prosecutor in their enforcement discretion. And that's a very important distinction in some cases like US v. Texas and the IRS. And in the case of Elizabeth Earle, there was an injunctive relief, but it was damages flowing from one specific instance of failure to prosecute. What we are asking is for the constitutional infirmity in the law to be declared and for specific provisions in the law to be enjoined. So we propose that 30-06-D3 and 30-07-D3 could be enjoined. So by redlining, I didn't mean that you're actually going to get out of red pen and do something with the type of legislature, but more that that would be the language that you identified that could be enforced. But again, I don't think that it's possible that the answer to what the Texas legislature would have wanted, given the constitutional infirmity in the statute, might have a different answer. If you think about that. Counsel, can we go back to Judge Wilson's question? So Texas law specifically requires that every single gas pump in our great state have a sticker, a very specific sticker. It has the Texas Department of Agriculture. It has the commissioner's name on it. And it's caused some controversy in our state because there's a lot of people who don't like the sticker. They don't like the content of the sticker. They don't like the fact that it's impinging on their property rights in the gas pump. It's detracting from the commercial value of the little videos that are shown, little ads. First Amendment injury, yes? To challenge the sticker? Yes. I would say there is a First Amendment injury, but again, that doesn't dictate one way or another how the merits of that sticker are. This is Judge Wilson's question. I have exactly the same one, which is, how are the merits any different? So you told us, compelled speech, you have no choice. The sticker or the highway? Pardon the pun. Diminishment of a property right. Discriminatory, too, by the way. You don't get to put up a sticker for Sid Miller's primary opponent or put up a sticker for Sid Miller's opponent in the general election. It's deeply discriminatory, under your theory. Yes or no, exactly the same merits. You might win or lose, but it's exactly the same as the case. I think, again, I'm not familiar with that striking, whether it's an unconstitutional conditions case, but I do think that there would be a First Amendment injury And again, that doesn't forecast, in any way, the entrance of the merits. Judge Wilson, before you sit down, could you flip the wall for a case where states are making it illegal to enter without consent? Would a property owner that wants to give general consent have standing to challenge the Hawaii or California laws? So the Hawaii case where individualized consent is illegal to enter without consent, but the property owner wants to give general consent. Does that property owner have standing under the same theory? Yes, I think that they would. I think that there would be a First Amendment injury, there would be an imputational injury, there would be, for example... Any time the government wants to regulate who goes in and out of the home, the castle, there's an injury that's sufficient to sue. Well, it's taking conditions on how you can, if or not you have permission to come in, there should be sufficient injury to sue. And again, that doesn't say that the merits will go one way or another. But in that case, they sued Hawaii. And so, didn't they? And how is this injury traceable to the defendant? Because under the court's precedent, as a precedent of the United States Supreme Court, it's not necessary that the... All that's necessary is that the particular defendant have a connection with enforcement of the law. So I've mentioned the Casey case, another case might be done in New York. What relief could we get against the law enforcement officers? You say we can't compel them to prosecute. What injunctions would you want to get them to do? So the injunction would, and I think I'm continuing to get into this question, the injunction would not say... So in the U.S. Supreme Court, for example, the injunction is not going to compel immigration enforcement officials to detain every single non-citizen who has committed certain supportable offenses and take away their enforcement discretion. We're not asking for the police to be bound to remove everything that's... Well, actually, you are. You are. Because what I'm asking for complaint... I can teach you what you can answer, and then you can ask a follow-up. Let her answer Rich's question, and then you can have a follow-up. You just said what you're not asking for. What are you asking for? So what we're asking for... Law enforcement officers. So what would happen in this case, from the U.S. Supreme Court, for example, is that the elements of the statute that are the predicate for a complete crime would be altered. What are the police officers? The chief of police, what does he have to do with any of that? We have a record that says that they are trained very carefully on the elements of trespass and what signage leads to a complete crime of trespass under 30.06 and 30.07. So the officers, at that point, they could either arrest or not arrest. Okay, I got it. At that point, I don't agree, but I got it. And I think Judge Jones had a question. Your complaint seeks a declaration that the notice requirements under 30.06 and 30.07 are unconstitutional and property owners only have to follow the general trespass law requirement. Correct. Which means that you would be,  have the police come and arrest people carrying guns onto your property, even though the general trespass statute does not apply to them. In other words, you can redline these other two provisions all you want to do, but you cannot create a crime where there is none in Texas law. And besides that, what? So I think what, again, if we trade the notice provisions in 30.06 and 30.07.3, then there's remaining language in those provisions that would say that written notice can be provided. So our position is not that we're rewriting 30.05 and intent that there would be, but again, I don't think that the regrettability amount of concerns on whether the court agrees with the specific way in which we ask for a release, because the court could disagree and that's what the morale of Montana case indicates. But you are asking us, you are asking us to rewrite 30.05 because basically, without the gun, the person who wants to come to your business is an invitee and you would serve them coffee or whatever you would do. In other words, you're wanting to make them a trespasser because they have a gun and that's not in 30.05. Isn't that right? It would otherwise be perfectly legally on your property, on the premises, in the church, whatever, except for this one condition you want to enforce but just outside the Texas law. So we're not asking for 30.06 and 30.07 in their entirety to be, what we're asking for are the subsections of those two provisions. Those provisions re-criminalize pension. It's quite a lot of legislation. It's quite a lot of legislation for the court as opposed to the legislature. I don't, I mean again, I think it's ordinary. I think that the city of Chicago and the department were mostly engaged, right? In that case, there was a general ban on shooting within 150 feet of the school and then there was an exception for labor figures. So the Supreme Court did not, it didn't stop to say, well, we can't do anything with this because we're either going to have to allow somebody to take it who the legislature didn't want to or we're going to have to eliminate the exemption for labor figures. There were standing, unquestionable standing and ultimately, you know, pretty trapped in on the back of the case. Again, these are sections of Texas severability law and this is routine. When you file a lawsuit against state law you can obtain an injunction that validates the application of certain provisions and then there will be questions that remain about exactly what the statute is going to do. I'm sorry, has she answered your question? You said time for rebuttal? Yes. Okay, thank you very much. Thank you. Mr. Hightower. May I please report? I'm going to speak briefly to the fact that there is no injury at this court. I will freestand and speak to the lack of age and medical injury here. Mr. DeSantis will speak to the constitutional issues and Ms. Perkins will speak to the lack of addressability. It's important to recognize that I think several sections here have already observed. The relevant statute issues, Penal Code Section 330-206 and 330-7 can never be enforced against the appellants. Likewise, they make no obligation, there is no burden on the appellants because they are a criminal statute to be enforced against alleged trespass. Well, if the appellants want to trespass a guest who has a knife, they don't have to pay the money and put up the signs that they do have to do if they want to trespass someone with a handgun. Is that correct? That would be a general practice. Doesn't that sound like a little more burden if you want to trespass someone with a handgun as opposed to trespass someone with a knife? The difference there, Your Honor, is that in Texas, the status quo rules, we have statutory open and concealed carry of handguns. And that's what this case is really about. We're not talking about knives or clubs or anything like this. We're talking about handguns. And the Texas legislature has acted to legalize open and concealed carry. And that's what the appellants don't want. But that is the status quo. I guess that is, I agree with you, that is the issue. But how is that not even any injury to the right that Justice Scalia said every founder of this country would have assumed? Quote, our law holds the property of every man so sacred no man can set his foot upon his neighbor's clothes without his name. How is that not even an injury when the government requires these special funds? Yes, but the government doesn't require it. Well, in order to trespass somebody, it does. No, but actually it doesn't, Your Honor, because there are two possible points of notice here. We can notice through the signs or through oral notice. But there's a third option. On the oral notice, the time that they try to orally notice somebody, the guy comes back with a sword. But that's the case under the general statute as well. That's the only way I can exclude people from my home, right? When my neighbors run the dogs the poop in my yard. Exactly. That goes to the nature of trespass law. There's a third option that they don't talk about. And that is in the state of Texas, under the common law, a property owner always retains the right to exclude unwarranted trespassers from their property. They can exclude them, and if the trespasser won't leave, they can call law enforcement officers to try to get them to leave. What if a government were to simply repeal all criminal trespass law? All criminal trespass law? You know what? We're not inviting trespass, but you know what? If there's criminal trespass, we're not going to arrest them. There's no longer time in this jurisdiction. I think the idea is to put them into our last problem also. Well, then there's the problem of the appellants who clearly want to criminalize the conduct of the trespassers in this particular situation. Again, under the common law, there is nothing that prevents a property owner from recognizing they have a trespasser, call it for any particular reason, call it if he's asking them to remove them, and there is nothing in the appellant's complaint that suggests that that won't happen. At least as to one of these cases, sir, I can't remember whether it's the coffee shop or the church. There is evidence in the record that there has never been a refusal of the police to come on any call. I'm happy to address the evidence. It's important to remember that in the case of the city of Houston, the city of Houston is on behalf of the chief of police. Most of the judgment of the police, while there is some discussion of evidence, it doesn't really relate. We are bound by the appellant's pleas. And if you look at their complaint, there is not a single allegation that the Houston police department will not respond to remove the trespasser when requested by a property owner. It's simply not there. How do you respond to the appellant's argument about what happened in the Cheddar's situation? I think the Cheddar's example shows exactly how this is supposed to work. In the Cheddar's example, the restaurant had a 30.7 fine against the opening care. According to the police report, which is really all we have to go on, a gentleman came in wearing a gun on a holster underneath his shirt. He leans over at some point. The shirt rises up. The gun becomes evident. The manager calls police. The police, the Western police, came and responded. Checked us out. Saw what happened. Spoke to the patron. Patron realized he had to keep his gun down. Went to the manager of the restaurant, who did not ask to have the patron removed. And the police report talks about it, and this is in the record, pages 14, 25, and 26. On the basis of the managers not asking them to remove the patron, the police didn't. Later on, I believe the police chief, Webster testified to the fact that if they asked for him to be removed, Webster police would have removed him. I thought it was the opposite. I thought Bacon said his officers wouldn't be able to enforce without the OSHA's help. On the basis of the statute alone, but again, the police can always remove an unwanted guest as a trespasser under the common law. And again, there is not an allegation in the complaint that governs, at least as to my part, and I have other parties I believe are under 12U6, that each of the other 26 are going to put a lot of argument about this in an appeal. There is no allegation to support this argument on appeal. Correct? So we're not supposed to look at the evidence. But whatever we have in the record, and how it's been done, is that the police remove people at the request of the premises owner. And there's nothing to dispute that. That happens every time. And they're not plowing or saying, we don't want to keep coming back to your place. That's correct. And in fact, if you go back to the complaint itself, in the complaint, appellants say, individuals can summon police to remove individuals from the premises. That's in the record in page 43. As to the church, the church has groups that have been trained to look and see. Maybe the person has a handgun. And if they have a handgun, they can tell them, we don't allow that here. But if they're uncomfortable, they don't need to address them. And they say in their complaint, they are instructed to call 911. That's in the record at page 45. Can I go back to my helper real quick? Yes. So again, a jurisdiction that decides to repeal the criminal trespass law altogether. As a homeowner, I take it I could not sue either under the same Ligars theory. Well, again, if they're coming all right, we can have somebody come on to the property for any reason at all. No, it's been repealed. I'm sorry? It's been repealed. But you, you, the legislature can repeal the common law. You don't need all of it. I'm talking about repeal. The legislature can repeal the common law. It's gone. Oh, so it's going to put all the law on trespass. Please, please, please stop. Just listen to my hypothetical. I'm not going to take a lot of time. Criminal trespass law is hereby repealed in all its forms, common law, any law, natural law, whatever. It's all gone. Can a homeowner sue? I'm assuming your answer is no than the IRS. To sue the chief of police or to sue the trespasser? To sue to challenge this repeal. You violated my property rights. I'm not sure. I can't even tell who the party is, who they're trying to sue there. That's why I'm asking. I'm not sure if they're suing the government, The appropriate defense. The law enforcement. I don't see the basis of a legal claim there for a lawsuit. I think that the situation here is underrepresentative and has some manner of It's the same with IRS theory.  I think the thing that can't be lost in this conversation is this is to the We'll talk about the HMFA treatment protection. As Judge Jones pointed out in her acceptance of the panel, in HMFA treatment coming into play, if you have similar circumstances, similar claimants, maybe they're being treated differently under a different standard. You have different standards. You may have different signs. Does that create diabolical origins? Diabolical intentions? Here, we have 30-0 law. The general criminal justice statute. It's sort of the catch-all of the pie of everything. No flip-flops, no pets, no shoes, no shirt, no service. None of that is a statutory or a constitutional right that's being barred. But in this case, 06-07, we are talking about a legislatively created right to carry a continual or open handgun that demands a different standard. And that is why the Hopkins case is there. There's conflict between what we're apologizing for, a lesser standard, a less-defined standard, which there really isn't much of one under 05, or a heightened standard, the specific standard that is provided in 06-07. Again, the reality of the state of Texas is that citizens have a right to carry an open, public-use handgun anywhere they want to, unless the property owner opts out of the system as prescribed in 06-07. Thank you, Mr. Hightower. We have your argument. I apologize. I did not mean to interrupt. Thank you. Thank you. Please affirm your objection. Thank you. Every court, my name is Alvin Sullivan. I live in the Harris County District Attorneyate, Harris County Sheriff. One of my only plans is to ask the courts to improperly rewrite the Texas law through traditional interventions rather than remedy a concrete injury. Texas trespass statutes regulate the actions of individuals entering a private property. These statutes do not require the property owner to take any specific action, nor do they impose duties, mandates, or penalties on the person. Oral notice is valid and is a sufficient way to exclude individuals from permanence. As a district court record, there were nothing in the statute that requires clients to be signed by a police employee to exclude others. Please think of this time frame as being broken down into three specific areas. First, there is no expressive injury or compel speech. There is no mandate, penalty, or restriction on such speech. Second, there is no cognitive injury, be it financial, associational, pecuniary, or reputational. They have alleged some type of injury, haven't they? They have, but the statute does not require them to purchase these items. How else would they come to have the time to fill out if they did not purchase them? They can file a loan. They can do what? Oral notice. I understand your argument. Well, there's nothing in the law that prohibits them from having a little gun and then a red circle with a slash, right? Exactly. They can do whatever they want. It's just that they don't get criminal trespass if the person refuses to leave. Absolutely. Clients are allowed to post any messages they want. They're allowed to post the very messages that they're complaining about. The only difference is there is no criminal penalty for messages that they're willing to post. Their message does not satisfy notice. They can provide any message that they want. The statute does not mandate that they not communicate a specific message or that they not communicate in a manner that they don't want to. My question is, I still have a hard time seeing what relieves against any specific defendant in this case to be briefed. What do any of these defendants have to do with these issues? I would agree, Judge. Here, the police, and we're going to have to propagate this in the law, the police chief for what they're testifying at, police show up, regardless of signage, and enforce the law on the defendant, regardless of whether it's signed, they're there to sign their report or to do. But they're not sent in to acquire the police to show up, are they? They're not there. The idea is a deterrent effect, ultimately, the right to prosecution. There's no way around that. There's no way around saying that the deterrent effect here is prosecution. That's what they're asking for, and there's no right to prosecution. I thought they were just asking for a declaratory judgment to declare that the ordinance is unconstitutional. Sure, but the basis of the argument is an interest in the deterrent effect of police protection. The deterrent effect of police protection, based on this case, is an outcome where there's an eventual prosecution. Here, the defective sections do not enforce claims. They're very much expressive or compelling. The defective section is fundamentally condemned to not enforce it. Defective sections do not require the closing of signage, the book selling, or restrict plaintiff's rights to convey arguments. Claimants are made free to communicate no violence, articulate no war, or release a viewpoint, design their own signage, or choose not to speak at all. Unlike other cases, such as Reed, where the plaintiff provided one, defective sections are fundamentally different. They do not impose requirements or sanction property owners. They are not contemplated. They do not regulate speech or restrict messages or limit any mode of expression. Claimants have no further discretion to design and display their own signage. Signs of any size, wording, or format, or to communicate their position through any other means. Without a mandate or felony, there is no expressiveness, no contact information, no restriction, and no compulsion. The plaintiff objects to requirements that focus on size, format, and video presentation. Their concern is not being compelled to speak, but rather that their preferred form of expression is insufficient to trigger criminal felony. The first amendment does not guarantee such a right. Furthermore, there is no implication of dissociation of freedom or right by exclusion. Claimants accept that their respect for a signage will hinder their capacity to promote messages and not violence and deconstitution. They claim that without such a sign, they cannot conclusively dissociate from firearms, which they believe infringes on their right, infringes on their freedom from dissociation and cartridge rights. Additionally, the claimant not having a signage removes the deterrence effect provided by criminal cartridge rights. But these concerns are not supported by the record. The church administrator, as previously mentioned, and the chief of police both confirmed that a law enforcement response option has a cartridge rights clause, regardless of the statutory signage posted. The right to exclude and dissociate his own arm is a state-required action to prevent this rule. The text of the law does not clarify the right to exclude armed individuals or restrict their ability to express any message, including those about non-violence in their pursuit. The key to this law is to only exclude anyone at any time for any reason, or if the man or woman is insufficient, and refuses to leave his apartment, the police will respond regardless of signage. The desire for deterrence does not immediately protect him. Any deterrence effect comes from prosecuting their parties, not from the infringement of their own rights. The Supreme Court has never rejected such an injustice against their family. Ultimately, the plaintiff's objection is to legislate a policy, not a constitutional violation. The right to exclude is an agreement with the association in the impact, regardless of time and environment. Next, we will discuss the political contribution. Plaintiffs contend that the financial costs associated with forcing time are malfinant. First, the plaintiffs are not required to purchase any time. As previously mentioned, the plaintiffs allow both orders. And even if the plaintiffs do not provide all orders directly to the painter, they can call the police, and the police will advise the painter to leave. At that point, if they still refuse to leave, they can't be arrested. When a government, either plaintiffs are not legally obligated to pay their Again, the statute only, the statute is intended to govern the interests of the public. It does not govern the plaintiffs' share. It does not govern the property owners. There is no opportunity for one of the property owners to act in the interests of the public. Any attempts to be heard are voluntary if they're not legally compelled. Self-imposed costs do not constitute an issue. They're not a military issue. Plaintiffs' threats of reputational harm. Plaintiffs contend that their reputations have been harmed by online criticism of their silence. I think the statutory silence is problematic. Intangible harm should vary in both relationships with traditional recognized injuries. Those are only definitions. Plaintiffs bear the burden of establishing that their described reputational harm qualifies as an arson. Plaintiffs' theory fails to meet this standard. Unlike these, in this instance, the government designated specific films as political propaganda, thereby deliberately stigmatizing the plaintiff. Here, the government has a very low definition, very low skill, and there is some level of confusion between the messaging and the facts. Any harm arising from public reaction to plaintiff's voluntary contentment is not considered action. Plaintiff's action will remain as a result of an independent action of some third party. In this case, a legal claim relies on third party authors. Additionally, plaintiff's lack of reputational harm theory relies on speculative and conjectural assumptions. That is, they have taken time in the statutory silence. That is, they are constant. That is a cause of reputational or perceived reputational harm. Reputationally and reclaiming themselves is disconnected. The historical or legal parallels necessary to establish reputational harm are misguided. Finally, there is a constitutional condition. Doctrine is triggered only when the government denies or threatens to deny a benefit unless the plaintiff surrenders the constitutional right. Plaintiff may deny no benefit. If the plaintiff does not surrender, there is a deterrent effect on the government law, which rests entirely on law enforcement's discretion to arrest and prosecute their parties. If they prosecute, the plaintiff does not have a legal need, does not have an interest in this benefit. In the end, the statutory scheme is fundamentally permissive, not juridical. Factions do not make legal decisions. Thank you very much, Mr. Kusama. We hope you are tonight. Thank you. Mr. Higgins. I would like to address the last two elements, the last two elements of the I think beginning with the address of the elements. I think one way to consider this case is begin at the end of the case. Begin at the end where plaintiffs have their best day in court and they get to the declaratory judgment on the injunction that they want. Declaration that the so-called signage requirements can't be applied or invalid. And the injunction enforces these so-called requirements. What do they get? Well, what they have is a simple way to establish trespass. Simple set of elements. And the set of elements that is required is going on the property, being asked to leave, refusing to leave. That's the complete crime under their best day. Now, counsel for appellants have said, have tried to address this by saying, well, this would be a, the actual remedy is a matter of severability, state law severability. Well, I think we can invalidate or articulate what remedy the court, what remedy a court could craft seeks while he is here. Because the court cannot craft a remedy for the grievance in this case. This is a grievance that needs to be addressed. The proper form is the legislature, the Texas legislature. The Texas legislature can rewrite the criminal statute. The Texas legislature can change the elements of a criminal offense. That is what the ultimate relief that they would be required to have. And this is something the court cannot give these plaintiffs. Now, I think the second point is, and plaintiffs, counsel for plaintiffs, has actually made the concession that we are asking the court to rewrite, to change, to reform the statute. So the court can't do it when there are no people. These are not independents to sue for that relief. These are, in the words of the district court, these are local dependents with no control over the language of the statute. They're not promulgators of the law. They need to follow the law and they need to apply the law to trespassers as the law is written. And they need to make finding a probable cause and make an arrest. They can use their discretion and act as the law is written. So there really is, and that also goes to personability as well. These dependents are not the cause of the relief. And I will note that previously, earlier, early in the case, the attorney general was a defendant in the case. The district court dismissed them on, dismissed the attorney general and the other state defendant on 11th Amendment grounds. They appealed and the plaintiffs chose to dismiss them. Now, can I just ask you this over here? If that's your position, the truth is in your client's jurisdiction, correct? Yes. And then this Cheddar's Crestwound? Yes. Okay. And Chief Bacon testified that without the 06 sign at the Crestwound, his officers would not have been able to remove the trespasser. So I'd ask you to apply that to the property professors' amicus brief. Judge Easterbrook, that the right to exclude means nothing without the right to enforce. So the Chief of Police Bacon is saying his officers can't enforce trespass without that sign. Doesn't that at least injure these commercial establishments? Chief Bacon's testimony was a little bit different. Chief Bacon said we would not have a right to remove these individuals unless the property owner asked for that. That's what Chief Bacon testified to. And so Chief Bacon's testimony is actually that, yes, we would remove them if the request was landed. And I think there's something else that was important from the record from Chief Bacon's affidavit, and that is that Chief Bacon testified the police respond to any call for trespass, whether it's no shirt or no shoes, whether it's having a dog with you. They respond in the same way. They come to the site. They come to the location. They ask the person to leave. By doing that, they establish one of the predicate elements themselves by asking the plaintiff to leave. And if the plaintiff does not leave, or I'm sorry, if the suspect does not leave, then they will make an arrest. And that's true of every form of every round or every trespass call, whatever the complaint is. Well, and irrespective of whether it's 30-05, 06, or 07, if the person won't leave, he's disobeying the request of the officer, right? Well, that's correct. That's correct. But I think more importantly is that the practice of my client or my client's police force is to establish probable cause for themselves by making the request, and if they don't comply, making the arrest. Mr. Higgins, I think I'm trying to encapsulate this case in a hypothetical, so bear with me for a second. Let's say you have two business owners. One has a compliant sign under 30-07 posted. The other one does not. Someone walks in both businesses with a concealed carry or open carry. In the business with a compliant sign, the owner says, the owner calls the police. In the business with no sign, the business owner says, please leave, they don't, and calls the police. It seems to me the basic position of the plaintiff is that those two, the business owner who doesn't have the sign up has suffered a diminishment in their right to exclude. What is your response to that? Well, first of all, they have not suffered a diminishment in their right to exclude. Tell me why not. What's your argument? Well, they do have tort penalties, number one. They do have tort penalties. And also, I don't think there is any practical diminution in their right to exclude, because what occurs is in any event, even if they're signed up, the police will come and they will ask the person to leave. If the person does not leave, they will make the arrest. And I think if you look at YouTube police videos, and that's what we will see in the press pass calls, you will see that the police show up. They tell the person, no, you need to leave, and that's when you arrest the person. But no diminishment if the customer shows, sees the sign and just doesn't walk into the business. How is that not a diminished injury? They decided not to go frequent that business? How is that not, under general land office versus Biden, a deterred injury? Well, it is not a hindrance, yes. But that goes to the question of whether they've got a justiciable interest in prosecuting others. And the answer to that is no. But I would also like to add that there is a question of possibility, because the police do have discretion. And the court can't really control the police prospectively in the exercise of their discretion of whether they may be arrested immediately or not may be arrested immediately. And the play here is about the conduct of the police and the police application of the statute, or application of the statute. Well, they're not asking for relief to the arrest system. They're not asking for a rewritten statute. And the record shows that the, first of all, the church's director just wanted to satisfy the police response. Every time the church called, for whatever reason, the police came, they acted. So the evidence in the record of the police instance, the evidence in the record of the police record of the church, undisputed evidence, is there's no different treatment by the police in this case.  And this case, as to the church, it was a summary judgment. Isn't that correct? It was a. All right. The evidence was admitted in it. It was, I believe, a column D1 motion. There's also a summary judgment. But the evidence wasn't admitted, and the evidence couldn't be consented in that situation. I think we have your argument, sir. Your time is up. Oh. Thank you very much. Thank you. Ms. Tabor, you've saved time for rebuttal. Thank you, Your Honor. One point about the evidence in the record and the differing procedural postures from the Supreme Defendant. The district court did consider all of the evidence with respect to all of the defendants, because with respect to Houston, which had filed a motion for judgment on pleading, to be an outlet to amend. And the district court, that submitted complaint, contained the evidence that was considered with respect to the other defendants. And the district court held that the defendant would be detailed, because he'd been accepting all of that, that's true until the last hearing. So, effectively, the district defendants are similarly situated in respect to the evidence in the record. And is that to say it was dismissed on a 12-B motion or Rule 56? Which one are you saying it was? It was dismissed on a 12-C motion. It was actually filed before discovery and then reintroduced after discovery. 12-C? 12-C. All right. And then the other defendants were located on a 12-B-1 motion, with the evidence in the record under consideration. But then, because of the proposed amendment complaint, the same evidence would be insufficient to support standing when the district court denied a motion to amend, because she's been on the basis of futility. With respect to adjustability, there's a couple of points. One, we've got both preparatory judgment and injunctive relief. And so the court said, you know, if we have standing to pursue either one of those forms of relief, then the case should go forward. I guess, Ms. Taylor, the addressability question is, if you win, how will it help your client? So tell me, how will it help your client? Remedy the alleged injuries if you win. How will it help? I think one has to take a look at the record. It's the record of Jail 22-16, which is a colorful chart from the police training experience. It has checkboxes. And it indicates that the police are, you know, trained precisely on when there is a prohibited entry and when there is not. And as the chatter in the report reflects, the police appropriately put that. Well, I have to say, I think we've heard, we've talked about that evidence quite a bit, and it sounds like it reflects that the owner did not orally ask the That doesn't support. I still, really just sort of in plain language, how will it help your client if you win? So they no longer have to choose between exercising the fullest expense of their right to exclude, on the one hand, while posting signs that they have an incorrect objection to, or giving up some of their right to exclude because there is at least a peripheral entry Okay, I'll try one more time. I know we're lawyers, so we talk in law, but your client, if they win, what will they do differently and how will their lives be better? So they will post, presumably, Okay, so they'll put up signs, okay. And then at that point, the law-abiding licensed firearm owner's attachment should be had evidence to indicate, carefully observe, the boundaries of their right to share. will know that they will commit a trespass. If they go in, they'll be deterred from entering because, again, they'll be able to indicate that they are following the letter of the law with respect to their right to carry. So, in other words, they would be able to give an effective legal number in a format that does not burden their expression. But doesn't the Cheddar's example show that you don't have to put up the sign to have the police exclude? I mean, there's a lot of slippage in the way you keep talking in your answers to Judge Duncan. You're conflating the right to an arrest and a prosecution under criminal law with the right to exclude under trespass law. So if Chief Bacon says, Yeah, I would absolutely exclude it, with or without the sign. That is, you get the gun owner, who's so offensive to you and your clients, out of your shop. You just don't get to prosecute under per se criminal law, which you don't, as Judge O has illustrated, you don't have a right to do that anyway. So can you be really precise in the way that you're talking to Judge Duncan, exclude or arrest? What is the thing that you want? So, what we want is the deterrence effect of the criminal law. And what is your case that says you have an interest in that? Because it is unconstitutional, it is unconstitutional for the state to position a benefit on you giving up a constitutional right. Imagine a municipality passing an ordinance that says that there's no complete crime of trespass or burglary unless you put a sign supporting the nearest re-election under criminal law. What if you just repealed criminal... Sorry. I'm going to go back to my earlier hypothetical to oppose a counsel. You just repealed criminal trespass altogether. And in your case, you're also doing away with civil trespass. Everything. Right. I think that's the problem with your case, is Lynn R. S. says you don't have an interest in that. Your case is left uncluded. That's my concern, anyway.  So, I think that under that hypothetical, I'm not sure what kind of challenge you would bring to the... You're violating all of our rights. Every property owner in the state. Yeah. You might not be in California because you're just on location. But you see the Lynn R. S. problem. I do see Lynn R. S. problem. You don't have the right to... Yeah. ...reform prison. So, again, I would just reiterate that it is entirely ordinary for a federal court for intervening in a challenge under X.R. Day Young to declare invalid a certain limited portion of a state statute where it violates the federal constitution or our advantages. And in that case, where it's, you know, for example, we have the voting and the medical, some of you accused today that you're doing away with the obviously undeterminatory exceptions for labor particulars. I don't think that, you know, that would simply change the elements of the statute. But it wouldn't go through the follow-up expression of the police and prosecutor to enforce the statute as altered under federal law however they want. So, again, I think we are not asking for mandatory police enforcement or prosecution of any specific individual. But we are asking for the deterring effect under federal law, which is the same as this. So that's, as a condescending matter, we recognize as impacting behavior in the real world. Thank you. We have your argument. Thank you. This case is submitted. Thank you.